# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PANTALEON,<br><br>Petitioner,<br><br>v.<br><br>SCOTT FRAUENHEIM,<br><br>Respondent. | Case No. 1:17-cv-01738-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following claims for relief: (1) counts 2 through 19 were time barred; (2) the trial court erroneously determined that California Penal Code section 801.1 was applicable; (3) the applicable limitations period expired before the California Legislature extended it; and (4) the prosecution of counts 2 through 19 violated the *Ex Post Facto* Clause. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On September 1, 2011, Petitioner was convicted by a jury in the Fresno County Superior Court of one count of oral copulation on a child and eighteen counts of committing a lewd act on a child. (2 CT[1] 546–64). Petitioner was sentenced to an imprisonment term of forty-two years

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on June 28, 2018. (ECF No. 20).

1

plus fifteen years to life. (LD[2] 1). On August 21, 2014, the California Court of Appeal, Fifth Appellate District affirmed the judgment. <u>People v. Pantaleon</u>, No. F064211, 2014 WL 4106021, at *9 (Cal. Ct. App. Aug. 21, 2014). The California Supreme Court denied Petitioner's petition for review on November 17, 2014. (LDs 3, 4). Thereafter, Petitioner filed two state habeas petitions in the Fresno County Superior Court, which denied both petitions without prejudice. (LDs 5–8).

On December 22, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent filed a motion to dismiss, which was later withdrawn without prejudice. (ECF Nos. 9, 16, 17). Petitioner filed a traverse,[3] and Respondent filed an answer. (ECF Nos. 18, 19).

## II.

## STATEMENT OF FACTS[4]

> Because appellant does not challenge the sufficiency of the evidence supporting his convictions, we summarize the relevant facts without delving into unnecessary details about the incest. Additional background information pertaining to specific assertions of error is provided in the Discussion section of the opinion.
>
> Pantaleon is the victim's maternal uncle. From approximately 1997 to 2001, when he was between the ages of 19 and 23 and the victim was 7 to 11 years old, Pantaleon subjected his niece to unlawful sexual behavior which included digital penetration, oral copulation, and intercourse. The abuse stopped sometime around 2002, notwithstanding one or two incidents during the victim's early teenage years when she rebuffed her uncle's advances.
>
> In approximately 2006, the victim confided in a boyfriend about the abuse. The boyfriend later told the victim's mother (i.e., appellant's sister) what Pantaleon had done to her daughter. The victim's family addressed the issue with Pantaleon, but chose not to report his crimes to the proper authorities.
>
> In January 2008, the victim disclosed the abuse to health care providers, which led to a formal investigation by police. In April 2008, the Fresno County Sheriff's Department arranged for the victim to make a pretextual phone call to Pantaleon for the purpose of eliciting incriminating statements from him. During the call, the victim asked, "Why did you rape me, why me [?] I was a little girl." Pantaleon replied, "... I don't know why I did it[.] I guess I was stupid about it." The victim also asked Pantaleon if he remembered when the abuse started, stating her belief that it began when she was seven years old. He answered, "I don't remember.

---

[2] "LD" refers to documents lodged by Respondent on March 2 and June 28, 2018. (ECF Nos. 10, 20).
[3] The Court notes that prior to the filing of Respondent's answer, Petitioner submitted a document labeled as a traverse that appeared to respond to the motion to dismiss.
[4] The Court relies on the California Court of Appeal's August 21, 2014 opinion for this summary of the facts of the crime. <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

Maybe it's something that...." Towards the end of their conversation, Pantaleon begged his niece for forgiveness.

A few days after the pretext call, the sheriff's department contacted Pantaleon and asked if he would participate in an interview with detectives at their headquarters. Pantaleon agreed, drove himself to the meeting, and spent more than two hours answering questions about his niece. He admitted to engaging in sexual intercourse with the victim "between six and ten times," having her orally copulate him approximately six to ten times, and digitally penetrating her on at least five occasions. Pantaleon stated that he was between the ages of 21 and 23 when the intercourse occurred, thereby corroborating the victim's timeline for the abuse. Based on their age difference of approximately 12 years and 7 months, Pantaleon's niece would have been between the ages of 8 and 11 years old when he had sex with her.

Audio recordings of the pretext call and of Pantaleon's pre-arrest interview were played for the jury at trial. The prosecution's case-in-chief also included testimony from the complaining witness, the former boyfriend, the victim's mother, and two law enforcement officers. Pantaleon testified in his own defense and called several family members as witnesses to help verify his chronological history of the events. Whereas the victim alleged the abuse occurred at multiple locations over a period of several years, Pantaleon insisted there were only a handful of incidents, all of which took place at his mother's home in Sanger over the span of 12 months.

Pantaleon testified that he engaged in sexual misconduct with his niece on five separate occasions between 2004 and 2005. He admitted to masturbating in front of the victim, digitally penetrating her one time, receiving oral copulation from her one time, and two instances of sexual intercourse. The victim was portrayed as a willing participant in these encounters. Pantaleon repeatedly stated that his niece was "over 14" when the incidents occurred, but did not specify his own age during the relevant time period.

Addressing the discrepancies between his trial testimony and pre-arrest statements concerning the number of times he abused the victim, Pantaleon said, "[The police] were pushing for big numbers, so I was going with their numbers." As for admitting that he was between 21 and 23 years old at the time of the incidents, Pantaleon testified that he believed the statement to be true when he made it, but did not realize he was indirectly corroborating the victim's claim that she was under 14 years of age. Regarding his failure to refute specific allegations about the victim's age during the police interview, Pantaleon explained, "I wasn't sure on the time frame, but I knew it wasn't that—that young. But I just didn't want to argue with them."

Pantaleon, 2014 WL 4106021, at *1–2.

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

3

529 U.S. 362, 375 (2000). The challenged action arises out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (*en banc*). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel,

709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The Court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Statute of Limitations

In his first, second, and third claims for relief, Petitioner raises related issues regarding the state courts' determinations that the eighteen counts of lewd acts with a child (counts 2 through 19) were not time barred. Specifically, Petitioner contends that: (1) counts 2 through 19 were time barred under California Penal Code section 800; (2) the trial court erroneously found that California Penal Code section 801.1 was the applicable statute of limitations; and (3) the applicable limitations period expired before the California Legislature extended it. (ECF No. 1 at 5, 7, 8).[5] Respondent argues that none of these claims is cognizable in federal habeas corpus. (ECF No. 19 at 6–7).

Petitioner's first, second, and third claims for relief do not allege any violation of federal law. Whether counts 2 through 19 were time barred under the California Penal Code is an issue of state law that is not cognizable in federal habeas corpus. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus." (citations omitted)). Accordingly,

---

[5] Page numbers refer to the ECF page numbers stamped at the top of the page.

Petitioner's first, second, and third claims for relief are not cognizable in federal habeas corpus, and they should be dismissed.

**B.** ***Ex Post Facto***

In his fourth claim for relief, Petitioner appears to allege that the Attorney General's brief, dated May 7, 2013,[6] misstates the law set forth in Stogner v. California, 539 U.S. 607 (2003). (ECF No. 1 at 10). The Court will construe the petition as raising an *ex post facto* claim. See Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) ("[T]he district court must construe *pro se* habeas filings liberally."); Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints."). Respondent argues that to the extent Petitioner raises an *ex post facto* claim, it is unexhausted but can be denied on the merits. (ECF No. 19 at 7).

1. Exhaustion

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162–63 (1996). See also Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) ("Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity"

---

[6] Petitioner is referring to the government's brief filed in the California Court of Appeal, Fifth Appellate District. (LD 10).

to apply controlling legal principles to the facts bearing upon his constitutional claim.'" (citations omitted)).

Petitioner states that his fourth claim for relief was raised on direct appeal to the California Supreme Court. (ECF No. 1 at 10). In the California Supreme Court, Petitioner filed a petition to exhaust state remedies, which presented no grounds for review and was filed solely to exhaust state remedies for federal habeas corpus purposes. (LD 3 at 1). The petition to exhaust state remedies noted that one of the claims Petitioner raised on appeal was that counts 2 through 19 were time barred by the statute of limitations. (LD 3 at 2). However, there was no mention of the *Ex Post Facto* Clause or citation to a state or federal case analyzing the *ex post facto* issue.[7]

Accordingly, the Court finds that Petitioner's *ex post facto* claim was not fairly presented to the California Supreme Court, and thus, is unexhausted. However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

2. Analysis

In denying Petitioner's state statute of limitations claims, the California Court of Appeal stated:

**Statute of Limitations**
Appellant revisits a statute of limitations argument that was presented below as part of a motion for new trial. As we explain, the claim was properly rejected by the trial court.

Pantaleon was charged by amended information with 18 counts of committing lewd acts upon a child in violation of section 288, subdivision (a). Each of these crimes was alleged to have occurred sometime between May 30, 1997 and May 29, 2001. Citing the six-year statute of limitations set forth in current and former

---

[7] Conversely, in the briefs submitted to the California Court of Appeal, Petitioner argued that although the Legislature may extend or increase statutes of limitations, the legislation may not revive a limitations period that has already expired. (LD 9 at 28–29; LD 11 at 5). In support of this argument, the briefs cited to In re White, 163 Cal. App. 4th 1576, 1582–83 (Cal. Ct. App. 2008). White, in turn, cites to Stogner v. California, 539 U.S. 607, 609, 632–633 (2003), and the *Ex Post Facto* Clause. White, 163 Cal. App. 4th at 1583. See Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue.").

8

> versions of section 800,[8] Pantaleon asserts that the charges were time barred when the original information was filed in 2010.
>
> The standard limitations period for a violation of section 288 is indeed six years because the offense falls within the category of crimes punishable by imprisonment for up to eight years or more. (§ 800; *People v. Smith* (2011) 198 Cal.App.4th 415, 424.) Mechanical application of section 800 would lead to the conclusion that the statute of limitations in this case expired sometime between May 2003 and May 2007. However, other provisions of the Penal Code must be taken into account to determine the timeliness of the charges.
>
> On January 1, 2001, more than two years prior to the earliest expiration date under the six-year limitations period, a new law was enacted which extended the statute of limitations for felonies enumerated in section 290, including violations of section 288. (Former § 803, subd. (h), as enacted by Stats. 2000, ch. 235, § 1; *People v. Simmons* (2012) 210 Cal.App.4th 778, 788 (*Simmons*).) Former section 803, subdivision (h)(1), provided in relevant part: "Notwithstanding the limitation of time described in Section 800, the limitations period for commencing prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001, or the offense is committed on or after January 1, 2001, shall be 10 years from the commission of the offense...." Although former section 803 underwent multiple changes in subsequent years, the 10–year statute of limitations applicable to section 288, subdivision (a), remained in effect at all times relevant to this case. (*In re White* (2008) 163 Cal.App.4th 1576, 1580–1581.) Therefore, effective January 2001, the applicable limitations period for Pantaleon's crimes ended no earlier than May 2007 and no later than May 2011.
>
> We now turn to Section 801.1, subdivision (a), which provides that prosecution of certain sex offenses, including section 288, "may be commenced any time prior to the victim's 28th birthday" if the crime "is alleged to have been committed when the victim was under the age of 18 years." This subdivision became effective January 1, 2006. (Stats. 2005, ch. 479, § 2; *Simmons, supra,* 210 Cal.App.4th at p. 787.) Pantaleon's niece was born in 1990 and was only 21 years old at the time of trial. Ergo, since none of the section 288 offenses were time barred as of January 1, 2006, Pantaleon's statute of limitations argument fails. (*Simmons, supra,* 210 Cal.App.4th at p. 787; § 803.6, subd. (b).)

Pantaleon, 2014 WL 4106021, at *8 (footnote in original).

"The Constitution's two *Ex Post Facto* Clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects." <u>Stogner v. California</u>, 539 U.S. 607, 610 (2003). The Supreme Court has held that "a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution." <u>Id.</u> at 632–33. The Supreme Court explicitly stated,

---

[8] Section 800 provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more or by imprisonment pursuant to subdivision (h) of Section 1170 for eight years or more shall be commenced within six years after commission of the offense."

9

however, that its holding in <u>Stogner</u> "does not affect" "extensions of *unexpired* statutes of limitations." <u>Stogner</u>, 539 U.S. at 618.

Here, the California Court of Appeal found that former California Penal Code section 803(h), which extended the limitations period to ten years, was enacted more than two years prior to the earliest expiration date under the original six-year limitations period. Subsequently, California Penal Code section 801.1(a), which allows for prosecution of certain sex offenses prior to the victim's twenty-eighth birthday, was enacted prior to the earliest expiration date of the extended ten-year limitations period. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005). As former California Penal Code section 803(h) and section 801.1(a) extended the applicable limitations period before they expired, the Court finds it is "perfectly clear" that Petitioner does not raise a colorable *ex post facto* claim. Accordingly, the Court may deny Petitioner's *ex post facto* claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v.</u>

10

Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 5, 2018**  /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE